# PB-C-98-540

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 6 2000

JAMES W McCORMACK, CLERK
By: _____
                        DEP. CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RODNEY BRAGG                                    PETITIONER

    v.                          No. PB-C-98-540

LARRY NORRIS, Director,
Arkansas Department of Correction              RESPONDENT


AMENDED PETITION FOR
WRIT OF HABEAS CORPUS


PETITIONER'S AMENDED PETITION
FOR HABEAS CORPUS AND EXHIBITS

**Hampton & Larkowski**

Patrick J. Benca
308 S. Louisiana
Little Rock, Arkansas 72201
(501) 376-6627
(501) 376-6979  fax

*Attorney for Appellant*

18

# Table of Contents

Table of Authorities .................................................................................... 4-6

Procedural History ....................................................................................... 7-10

Factual Basis for Petition ........................................................................... 11-12

Argument ......................................................................................................... 13-31

   1. A constitutional violation resulted in the conviction of one
      who is actually innocent ................................................................. 13-22

     **Constitutional Violations** .......................................................... 13-20

      A. Prosecutorial misconduct for reliance on perjured or false testimony in
         obtaining conviction which is in violation of the Due Process Clause of the
         Fourteenth Amendment .......................................................... 13-16

      B. Trial counsel's performance fell below the standard of reasonableness of
         effective assistance of counsel as provided by the Sixth Amendment to the
         United States Constitution ..................................................... 16-18

      C. The State failed to disclose exculpatory evidence, in violation of *Brady v.*
         *Maryland* ................................................................................. 19-20

     **Actual Innocence** ........................................................................ 21

     **Request for Evidentiary Hearing** ............................................ 22

   2. Petitioner's arguments are not procedurally defaulted (second argument) ..... 22-26

      A. The prosecutorial misconduct argument is not defaulted because there is no
         remedy under Arkansas law for this claim ........................... 22

      B. The ineffective assistance of counsel, and the Eighth Amendment claims are
         not defaulted because interference by state officials made compliance
         impracticable .......................................................................... 22-26

     **Request for Evidentiary Hearing** ............................................ 26

   3. The Petitioner's sentence constitutes cruel and unusual punishment under the
      United States Constitution because it is grossly disproportionate to the nature of
      the offense ........................................................................................ 26-31

    A.  The harshness of the penalty far outweighed the gravity of the offense..........28

    B.  More serious crimes are subject to the same penalty or to less serious penalties in the State of Arkansas ................................................................. 29-30

    C.  The sentences imposed for commission of the same crime in other jurisdictions is substantially less ................................................ 30-31

Conclusion ........................................................................................31

Certificate of Service ........................................................................32

Exhibits (Tabs)...........................................................................A-P, T

    Forfeiture for Gray Mustang .................................................................A

    Subpoena for Rodney Mitchell records .................................................B

    Letter from Sheriff's Dept. re:  Rodney Mitchell ...................................C

    Bill of Sale for Gray Mustang...............................................................D

    Registration for Gray Mustang .............................................................E

    Picture of Rodney Bragg.......................................................................F

    John Nolen Affidavit.............................................................................G

    Steve Crite Affidavit ............................................................................H

    Rodney Bragg Affidavit.........................................................................I

    Police Report........................................................................................J

    *Nolle presequi* motion for March 1, 1994 charges .................................K

    Arkansas Dept. Correction policy AD-95-10 .........................................L

    December 2, 1997 letter to Circuit Judge Clerk .....................................M

    Letter to Circuit Judge dated December 15, 1997 ..................................N

    Jury Verdict Forms (guilty/life sentence) ...............................................O

    Pre-sentence investigation report of Petitioner .......................................P

Transcript pages referenced in petition in chronological order .............................. T

# Table of Authorities

## Cases:

*Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103 (1957).....................................................13,16

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986).....................................................7

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963) ......................................................19

*Bragg v. State.* 297 Ark. 348, 760 S.W.2d 878 (1988)........................................................25

*Bragg v. State.* 329 Ark. 613, 946 S.W.2d 654 (1997)........................................................7

*Browning v. State,* 274 Ark. 13, 621 S.W.2d 688 (1981) ....................................................19

*Brownlow v. Groose,* 66 F.3d 997 (8th Cir. 1995) ............................................... 12,20-21

*Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763 (1972) ...........................................14,19

*Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680 (1991) ............................................27

*Hill v. Lockhart,* 28 F.3d 832 (8th Cir. 1994) *cert. denied,* 115 S.Ct. 778 (1995) .............16

*Hilstrom v. State,* 325 Ark. 317, 923 S.W.2d 874 (1996)...................................................25

*Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703 (1982)...........................................................27

*Imbler v. Pachtman.* 424 U.S 409, 96 S. Ct. 984 (1976) .....................................................19

*Keeney v. Tamayo-Reyes,* 504 U.S. 1, 112 S.Ct. 1715 (1992)............................................26

*Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555 (1995) ................... ...........................14,16

*McCoy v. Norris,* 125 F.3d 1186 (8th Cir. 1997)................................................................21

*Mooney v. Hollohan,* 294 U.S. 103, 55 S.Ct. 340 (1935) ............................................13,16

*Moses v. State.* 327 Ark. 420, 938 S.W.2d 233 (1997)................................................. 25-26

*Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639 (1986)......... ...................... 12,20,22-24

*Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173 (1959) ................................. 13-14,16

*O'Rourke v. Endell*, 153 F.3d 560 (8th Cir. 1998) ...................................................17

*Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133 (1980) .........................................27

*Sanders v. State*, 329 Ark. 363, 952 S.W.2d 133 (1997) ....................................25-26

*Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851 (1995) ...............................................21

*Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001 (1983)..........................................27,31

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1982) .....................16-17,24

*Sullivan v. State*, 301 Ark. 352, 784 S.W.2d 155 (1990)..........................................25

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497 (1977) .........................................23

*Warren v. State*, 329 Ark. 637, 950 S.W.2d 462 (1997)......................................25, 26

*Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544 (1910) ..............................26-27,29

*Weekley v. Jones*, 76 F.3d 1459 (8th Cir. 1996) .....................................................16

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976)......................................19

**Statutes:**

U.S. Const. amend. VI ..............................................................................17

U.S. Const. amend. VIII..............................................................................18

28 U.S.C. § 2254 (1998) ..................................................................9,13,22,26

Ark. Code Ann. § 5-10-101 (Michie 1999) .....................................................29

Ark. Code Ann. § 5-10-102 (Michie 1997) .....................................................29

Ark. Code Ann. § 5-11-102 (Michie 1997) .....................................................29

Ark. Code Ann. § 5-12-102 (Michie 1997) .....................................................29

Ark. Code Ann. § 5-12-103 (Michie 1997) .....................................................29

Ark. Code Ann. § 5-13-201 (Michie 1997) .....................................................29

Ark. Code Ann. § 5-13-310 (Michie 1997) ................................................................. 29-30

Ark. Code Ann. § 5-14-102 (Michie 1997) ..................................................................... 29

Ark. Code Ann. § 5-38-301 (Michie 1997) ................................................................. 29-30

Ark. Code Ann. § 5-64-401 (Michie 1997) ..................................................................... 28

Ark. Code Ann. § 16-90-804 (Michie 1997) .................................................................... 30

Iowa Code Ann. § 902.9 (Supp. 1999) ........................................................................... 30

Iowa Code Ann. § 124.401 (Supp. 1999) ....................................................................... 30

La. Rev. Stat. Ann. § 40.967 (Supp. 1999) ..................................................................... 30

Minn. Stat. Ann § 152.024 (1998) ................................................................................. 30

Mo. Stat. Ann. § 558.011 (1999) ................................................................................... 30

N.D. Cent. Code § 12.1-32-01 (Repl. 1997) ................................................................... 30

N.D. Cent. Code § 19-03.1-23 (Supp. 1999) .................................................................. 30

S.D. Codified Laws § 22-6-1 (6) (Rev. 1998) ................................................................ 31

S.D. Codified Laws § 22-42-2 (Rev. 1998) .................................................................... 31

Tenn. Code Ann. § 39-17-417 (c) (2) (Supp. 1999) ........................................................ 30

Tenn. Code Ann. § 40-35-111 (b) (3) (Repl. 1999) ......................................................... 30

**Rules:**

Ark.R.Evid. 403 (1999) ................................................................................................. 8

Ark.R.App.P. Rule 5(a) (1999) ................................................................................... 8,23

Ark.R.Crim.P. Rule 17.1(d) (1999) ............................................................................... 19

Ark.R.Crim.P. Rule 17.3(a) (1999) ............................................................................... 19

## Procedural History

On January 19, 1996, a Nevada County jury found the Petitioner guilty of delivery of a controlled substance and he was sentenced to life imprisonment. Petitioner, represented by counsel, appealed to the Arkansas Supreme Court raising the following issues:

(1) the jury venire was not representative of a fair cross-section of the community in that the number of black persons on the venire was not proportionate to the percentage of black persons residing in Nevada County;

(2) the State systematically excluded three black persons from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986);

(3) the trial court erred in allowing into evidence three hearsay statements made by Agent Ray;

(4) the trial court erred in allowing Agent Ray to testify concerning the 1994 drug transaction in Clark County and in allowing the State to cross-examine him about a prior arrest in Nevada County; and

(5) the evidence was insufficient to convict him of the charge.

The Arkansas Supreme Court found no reversible error and affirmed his conviction. *Bragg v. State*, 329 Ark. 613, 946 S.W.2d 654 (1997).

On July 21, 1997, Mr. Bragg filed a petition for post conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. He proceeded *pro se*, and the following grounds were alleged:

(1) counsel was ineffective for failing to challenge the insufficiency of the evidence and preserve same for appellate review;

(2) counsel was ineffective for failing to challenge the evidence admitted at trial as being the drug which was allegedly bought from Petitioner;

7

(3) counsel was ineffective for failing to subpoena John Nolen as a witness on petitioner's behalf;

(4) counsel was ineffective for failing to object to the admissibility of evidence introduced by the prosecution of prior arrest under Ark.R.Evid. 403;

(5) counsel was ineffective in failing to request a cautionary instruction and/or admonition to the jury; and

(6) the sentence received constitutes cruel and unusual punishment.

On September 16, 1997, the petition was denied. On September 24, 1997, Petitioner filed a timely notice of appeal and designated the entire record of the Rule 37 proceedings. He also filed a motion for a court order directing the Circuit Court Clerk of Nevada County, Arkansas to furnish him with a certified copy of the record designated on appeal. The circuit court granted the motion.

Concerned over the status of the Rule 37 record being lodged with the Arkansas Supreme Court, the Petitioner wrote the Clerk on December 2, 1997. He requested that if the record had not been tendered, the court provide him with an approximate date on which it would be filed. On December 15, 1997, the Petitioner wrote Circuit Judge Joe Griffin advising him that the Clerk had responded to his request, but that "none of the pertinent requests or questions were answered." He further advised the trial court that he had filed a motion for extension of time to lodge the record with the Supreme Court. The Petitioner included, with this letter, a copy of said motion, and three (3) copies of the order to be signed by the judge. Additionally, he included a self-addressed stamped envelope for the return of one of the orders. The court never acted on the motion. As a result, the Petitioner was required to file the record with the Supreme Court on December 23, 1997 in accordance with Ark.R.App.P. Rule 5(a) (this rule provides for a ninety day

(90) period to file record, "unless the time is extended by order of the trial court...").  The record was not tendered to the Arkansas Supreme Court until January 22, 1998, one hundred and twenty (120) days after the notice of appeal was filed.  The Petitioner's attempt to tender the record was denied by the clerk.

Petitioner then filed a motion for rule on clerk, attempting to file the record belatedly.  In noting that the motion for extension of time was not acted on by the trial court, the Supreme Court found that is was the duty of the Petitioner to obtain action on the motion for extension of time.  Citing that no good cause had been demonstrated, the motion for rule on the clerk was denied. *Bragg v. State*, CR 98-341 (Ark.Sup.Ct. May 21, 1998).

December 4, 1998, the Petitioner filed a Writ of Habeas Corpus and a Memorandum in Support of Petition for Writ of Habeas Corpus and Exhibits under 28 U.S.C. § 2254.  In his writ, the Petitioner raised the following grounds in his prayer for relief:

(1) he was denied effective assistance of counsel because counsel failed to interview or call two witnesses whose testimony would have exonerated petitioner and failed to secure documentary evidence that would have exonerated petitioner;

(2) his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to petitioner; and

(3) the sentence imposed on petitioner constitutes cruel and unusual punishment in violation of the Eighth Amendment.

A response to Petitioner's writ was filed on December 31, 1998, contending that the Petitioner did not properly present his federal claims in state court, therefore, he had procedurally defaulted his federal claims.

After examining the petition for habeas corpus relief, and the response, the Court ordered the Petitioner to submit a written statement titled "Petitioner's Statement of Cause and Prejudice."  Within its Order, the Court noted circumstances, and cited case

law, in which federal review can be had on procedurally defaulted claims. The Petitioner timely filed the Petitioner's Statement of Cause and Prejudice in which he outlined numerous facts, and exhibits to support his ability to get federal review.

On April 6, 1999, the Court issued another order requesting both parties to provide to the Court information surrounding the Rule 37 petition and appeal. The parties replied timely. [1]

On October 19, 1999, counsel was appointed by the Court to represent the Petitioner, and divested to file an amended petition to the Court. The original petition, and the information provided to the Court pursuant to its orders will be addressed within the confines of this amended petition.

---

[1] It appears from the record provided to the Petitioner, that the respondent did not answer all the questions asked by the Court in the April 6, 1999 order.

### Factual Background for Amended Petition

Investigator Ray has been an under cover officer for the South Central Drug Task Force since 1990. (T. 180). He was the only "eyewitness" to testify about the events that lead to the eventual conviction of the Petitioner.

Ray testified that on March 26, 1993 he and a confidential informant, Mark Smith, went to the residence of John Nolen in Prescott, Arkansas for the purpose of purchasing cocaine. (T. 186-187). While in the residence, Ray said he recalled that Nolen brought him to the kitchen of his residence where he encountered three (3) subjects sitting at the kitchen table. (T. 191). He further testified that one of the persons at the table approached him with a piece of rock cocaine and exchanged it for fifty dollars ($50.00) in United States Currency. The confidential informant, Mark Smith, did not witness this transaction. (T. 191, 214). Upon leaving the Nolen residence, Ray inquired as to the identity of subject he purchased the cocaine from. (T. 193). After Ray described the individual, Smith believed him to believe a guy by the name of Rodney. He later advised Ray that he thought it might be Nolen's cousin, <u>Rodney Mitchell</u>. (T. 193) (emphasis added).

Ray testified that he was presented with a photograph of Rodney Mitchell, but that it was not the subject who was in Nolen's residence on March 26, 1993. Ray was asked on cross-examination where the supposed photograph of Rodney Mitchell came from, and he responded, "[f]rom the Nevada County ... Sheriff's Department." (T. 215).

According to Ray, on March 1, 1994, he and another informant, Steve Crite, were working together in Clark County. (T. 205). Ray testified Crite entered into a drug

transaction with a subject whom Crite knew as "Rodney." (T. 205).   At that time, Ray obtained a tag number from the vehicle that the subject was driving.  It was Ray's testimony that the car driven by the subject came back registered to the Petitioner. (T. 205).   This vehicle was a Gray 1987 Mustang, Vin # 1FABP42E77HF133812. (Exhibit A).  Ray stated that he then located a photograph of the Petitioner from the Nevada County Sheriff's Department, and positively identified the person he dealt with at the residence of Nolen, a year prior, as the Petitioner. (T. 216).  Steve Crite never testified on behalf of the State.  (T. 64-65).   The accuracy of Ray's testimony about the incidents that are alleged to have occurred on March 26, 1993, and March 1, 1994 are called into serious question by the Petitioner, and are addressed in a majority of the issues now before the Court.

# Argument

## 1. A constitutional violation resulted in the conviction of one who is actually innocent.

A petitioner may obtain review if he can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639 (1986); *Brownlow v. Groose*, 66 F.3d 997 (8th Cir. 1995). Under this rule, two (2) things must be shown before review can be had. First, violations of a constitutional magnitude did occur. Second, these violations resulted in the conviction of one who is actually innocent. In the case at bar there were several constitutional violations that resulted in the conviction of the Petitioner and these violations resulted in the conviction of one who is actually innocent. Additionally, Petitioner requests that the Court grant him an evidentiary hearing pursuant to 28 U.S.C. § 2254 (e) (2) (1998).

## Constitutional Violations

A. <u>Prosecutorial misconduct for reliance on perjured or false testimony in obtaining conviction which is in violation of the Due Process Clause of the Fourteenth Amendment.</u>

The knowing use of perjured testimony by a prosecutor violates the Due Process Clause of the Fourteenth Amendment. *Mooney v. Hollohan*, 294 U.S. 103, 55 S.Ct. 340 (1935). Moreover, due process is offended whether the prosecution actively promotes the perjury, or passively relies upon its effect by failing to correct an improper impression made by the witness before the jury. *Alcorta v. Texas*. 355 U.S. 28, 78 S.Ct. 103 (1957); *Napue v. Illinois*. 360 U.S.

13

264, 79 S.Ct. 1173 (1959). Here, the incorrect or false testimony was sponsored by the prosecution, whether or not knowingly, because it was presented through the direct examination of Investigator Keith Ray in the prosecution's case in chief.

Furthermore, knowledge of perjured testimony may be imputed to the prosecutor, who has no actual knowledge of the falsity of the witness' testimony, if it is known to the investigators or other members of the prosecution team. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972). The investigating officer is a member of the prosecution team whose disclosure failures are imputed to the prosecutor. *Kyles v. Whitley*, 515 U.S. 419, 115 S.Ct. 1555 (1995).

In his testimony, Ray stated he relied on certain documentary evidence to support his belief that Rodney Bragg was the person he supposedly dealt with on March 26, 1993, the offense for which the petitioner was convicted.

First, Ray stated that he had ruled Rodney Mitchell out as a possible suspect based on looking at a photograph of Mitchell that he had obtained from the Nevada County Sheriff's Department. (T. 215). This testimony was false. On November 11, 1999, the Petitioner subpoenaed the Nevada County Sheriff's Department for the arrest records and any photographs taken of Rodney Mitchell. (Exhibit B). The Petitioner received a letter, *inter alia*, from the same sheriff's department stating that there are no files or photographs in existence of Rodney Mitchell. (Exhibit C).

Second, Ray further stated that on March 1, 1994, he ran a tag number on a vehicle supposedly involved in a drug transaction. (T. 205). This vehicle was

14

identified as a 1987 Ford Mustang. (Exhibit A). According to the testimony of Ray it came back registered to the Petitioner. (T. 205). This is impossible. Records reveal that the vehicle in question was not purchased or registered with the Department of Finance and Administration until March 22, 1994, twenty-one (21) days after Ray testified that he the tag came back belonging to the petitioner. (Exhibits D, and E).

Third, Ray stated that after the incident on March 1, 1994, he looked at a photograph of the Petitioner supplied by the Nevada County Sheriff's Department. (T. 215). However, all records (including pictures), supplied by that department, show that Petitioner was first arrested by the Nevada County Sheriff's Department on June 21, 1995 -- more than three (3) months later. (Exhibit F).

Furthermore, Ray stated that he witnessed two (2) transactions involving the Petitioner. It was his testimony that on March 26, 1993 he had a transaction with the Petitioner in the home of John Nolen. (T. 191). However, in an affidavit prepared by Mr. Nolen, he stated that no such incident ever took place. He stated that at the time that the alleged incident took place, he was an employee at a grocery store in Prescott, Arkansas. Further, Nolen had been asked by the prosecution if he knew the Petitioner, and he responded, "I did not know him." (Exhibit G).

The second transaction was said to have taken place on March 1, 1994. According to the testimony, there was another person, other than Ray, that was witness to this transaction. (T. 199). Ray stated that confidential informant, Steve

"[C]ounsel has a duty to make <u>reasonable investigations</u> or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104 S.Ct. at 2066 (emphasis added).

To demonstrate prejudice from ineffective assistance of counsel, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S. Const. amend. VI; *Strickland v. Washington,supra*; *O'Rourke v. Endell,* 153 F.3d 560 (8th Cir. 1998).   Trial counsel failed to adequately investigate the facts leading to the arrest and subsequent conviction of the Petitioner.  A proper investigation of the Petitioner's claims made to counsel, and the reports provided through discovery, would have revealed the falsity of Investigator Ray's claims.

The Petitioner states in his affidavit, that he informed trial counsel of the following matters critical to his defense:

1. That he was innocent of the charge against him, and did not sell cocaine to anyone on March 26, 1993 or March 1, 1994.

2. That he did not own a 1987 Ford Mustang on March 1, 1994, the date of the alleged drug-buy from that vehicle.

3. That he had not been arrested in Nevada County prior to March 1, 1994 and there was no photo of him in the Nevada County Sheriff's office until June of 1994.

4. That John Nolan would testify that he did not see me or Agent Ray on March 26, 1993 and that he was at work at the time of the alleged buy and could prove it and that he did not even know Rodney Bragg.

5. That Steve Crite would testify that he did not buy drugs from the Petitioner on March 1, 1994 and had never bought drugs from the Petitioner. (Exhibit I).

The information provided to trial counsel by Petitioner was in direct contradiction with the "evidence" provided by Ray through his reports and testimony. A <u>reasonable</u> investigation would have revealed that everything that the Petitioner stated to trial counsel was accurate. Had trial counsel investigated the information provided by counsel, he would have had documentary and testimonial evidence to impeach the testimony of Ray. Although discussed in greater detail above, the evidence would have shown the following: (1) Petitioner was not in the home of Nolen on March 26, 1993, (2) there were no pictures of Rodney Mitchell at the Nevada County Sheriff's Department to rule him out as a possible suspect, (3) that it was impossible for the registration plates, in March 1, 1994, to come back belonging to the Petitioner, (4) that Ray could not have possibly identified the Petitioner through a picture located at the Nevada County Sheriff's Department on March 1, 1994, and (5) that Steve Crite did not participate in drug deal on March 1, 1994. A simple investigation would have destroyed all of the evidence presented by the State. It is abundantly clear that had <u>this</u> information been put before the jury, there would have been a different result. The jury would have found the Petitioner not guilty -- no question. (*See* argument *infra*).

A simple investigation of the discovery provided by the State would have also revealed that the testimony of Ray could not have possibly been accurate, for the same reasons noted above. *See* Exhibit J.

C.  The State failed to disclose exculpatory evidence, in violation of *Brady v.*
*Maryland.*

As a matter of due process of law, a criminal defendant has a right to all
evidence that is "material either to guilt or punishment" and is "favorable to the
accused, irrespective of the good faith of the prosecutor" in failing to make the
disclosure. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States*
*v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392 (1976). Impeachment evidence qualifies
under *Brady. Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763 (1972). *Giglio*
further provides that when the reliability of a given witness is critical to a
determination of guilt or innocence, non-disclosure of evidence affecting
credibility falls within the *Brady* rule. *Id.* This duty continues after trial. *Imbler*
*v. Pachtman,* 424 U.S 409, 96 S. Ct. 984 (1976). Arkansas has adopted these
rules. *See* Ark.R.Crim.P. Rule 17.1(d) (1999); Ark.R.Crim.P. Rule 17.3(a) (1999);
*See also Browning v. State,* 274 Ark. 13, 621 S.W.2d 688 (1981) (evidence in the
hands of the police is in the "possession or control" of the prosecutor).

The evidence in the hands of the Nevada County Sheriff's Department at the
time of trial, was the lack of photographs testified to by Ray. He stated that he
had looked at two (2) pictures between the time of March 26, 1993, and March 1,
1994. The first picture he testified to seeing was of Rodney Mitchell, and after
looking at this picture, he testified that he ruled him out as a possible suspect in
the alleged March 26, 1993 drug sale. (T. 215). Ray testified that the next picture
he looked at on March 1, 1994 was a picture of Petitioner. (T. 206). It was his
testimony that this was the subject that he allegedly dealt with on March 26, 1993.
(T. 206). Ray testified that both of these pictures were provided to him by the

Nevada County Sheriff's Department. (T. 206, T. 215). However, the Petitioner has subpoenaed those photographs, and any reports arrest reports relating to those photographs, and no pictures, or reports, of either Rodney Mitchell, or the Petitioner existed during the time Ray testified to seeing them. (Exhibits C & F).

Ray testified that Steven Crite was working for him during the alleged drug transaction that took place on March 1, 1994. (T. 212). According to an affidavit prepared by Crite, he stated that he received a visit from Ray and Prosecutor Henry Morgan prior to the Petitioner's trial. He declined because any statements by him against the Petitioner would not have been accurate or true. (Exhibit H). The information provided in this meeting was never turned over to trial counsel. [2]

The State claimed that a drug sale, on March 1, 1994, was made by Petitioner from a 1987 Ford Mustang that according to Ray was registered to him on March 1, 1994. This was simply not possible. *See* Exhibits D & E. These exhibits verify that the car was purchased by Petitioner from Greg Brewer on March 22, 1994, and registered in his name on March 23, 1994. This vehicle was subsequently taken from Petitioner and forfeited by the Clark County Circuit Court as the vehicle from which the alleged drug sale was made to Crite on March 1, 1994. (Exhibit A). Petitioner believes that the State had discovered this error prior to trial, as the State's attorney was very careful not to inquire on direct examination as to the make or model of the vehicle used on March 1, 1994. This information was exculpatory and should have been turned over to trial counsel.

---

[2] The charges stemming from this alleged March 1, 1994 incident were later *nolle prosequi* by the State, and were never again brought against the Petitioner. (Exhibit K).

## Actual Innocence

In addition to a showing of a constitutional violation (*supra*), the Petitioner must show that the violation resulted in the conviction of one who is actually innocent. *Murray v. Carrier, supra*; *Brownlow v. Groose, supra*.

To meet the actual innocence standard, the Petitioner must present new reliable evidence not presented at trial and demonstrate that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851 (1995); *Brownlow v. Groose. supra. See also McCoy v. Norris*, 125 F.3d 1186 (8th Cir. 1997) (provides a good historical understanding of the "actual innocence" requirement).

The new reliable evidence not presented at trial is impressive, and was discussed in length above. The evidence briefed above, and provided through attached exhibits impeaches every key piece of testimony by Ray. If the ability was available to counsel, there is little doubt that they would have found the Petitioner innocent of this charge. In any event, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo, supra.*

21

## Request for Evidentiary Hearing

Petitioner is entitled to an evidentiary hearing on this claim for relief pursuant to 28 U.S.C. § 2254 (e)(2)(A)(ii) because the evidence was not disclosed by the prosecution and could not have previously been discovered by due diligence as a result of the intentional falsification of evidence by the testifying officer; and pursuant to § 2254 (e)(2)(B) because Petitioner's evidence is sufficient to demonstrate his actual evidence by clear and convincing evidence such that no reasonable fact-finder would have found him guilty at trial.

## 2. Petitioner's arguments are not procedurally defaulted. (second argument)

A. The prosecutorial misconduct argument is not defaulted because there is no remedy under Arkansas law for this claim.

The Petitioner has argued *supra* that this claim is not procedurally defaulted under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639 (1986). Additionally, it is not procedurally defaulted because there is an absence of available state remedies under 28 U.S.C. § 2254 (B)(1)(b)(i). This applies because the newly discovered evidence of prosecutorial misconduct was made after the time for filing for state post-conviction relief and there is no longer a remedy under state law for presenting the claim of prosecutorial misconduct. 28 U.S.C. § 2254(c) (1999).

B. The ineffective assistance of counsel, and the Eighth Amendment claims are not defaulted because interference by state officials made compliance impracticable.

A federal habeas petitioner can obtain review of procedurally defaulted federal claims if he shows cause for his default in state court and actual prejudice

as a result of the constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497 (1977). As the Court noted in its January 12, 1999 order, the existence of cause "must ordinarily turn on whether the [Petitioner] can show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2648 (1986).

Petitioner attempted to present these issues on appeal after the denial of his Rule 37 petition.[3] Citing that Petitioner failed to lodge the transcript of those proceedings in accordance with Ark.R.App.P. Rule 5(a), the Arkansas Supreme Court did not address these issues. However, it was state officials that made compliance with this rule impracticable. Those officials include trial court who failed to rule on his motion for extension of time, the clerk who failed to inform the Petitioner of needed information, and the Respondent, who made the Petitioner's ability to keep in touch with necessary agencies impracticable.

On July 21, 1997, Petitioner timely filed a Rule 37 petition with the Nevada County Circuit Court. Said petition was denied without a hearing. Petitioner filed a timely notice of appeal and designation of record on September 24, 1997, making the deadline for lodging the record of the Rule 37 cause with the Clerk of the Arkansas Supreme Court to be on December 24, 1997.

Petitioner, being incarcerated in the Arkansas Department of Correction ("ADC"). Cummins Unit, was prohibited from making telephone calls to anyone

---

[3] The ineffective assistance of counsel was also argued that have been procedurally defaulted under *Murray v. Carrier*, 477 U.S. 478, 488, S.Ct. 2648 (1986).

23

other than those person who are pre-approved by the administration to be called collect only. Under ADC policy AD-95-10, inmate can only add new numbers to be called collect every ninety (90) days. (Exhibit L). As a result of said phone policy, it would have been impossible for Petitioner to have been able to track the progress of the preparation of his record by telephone communication. Therefore, Petitioner was left to communicate only by mail with the Circuit Clerk and Judge, which he attempted to do.

Concerned over the status of the Rule 37 record being lodged with the Arkansas Supreme Court, the Petitioner wrote the Clerk on December 2, 1997. (Exhibit M). He emphasized that if the record had not been tendered, to provide him with an approximate date that it would be. On December 15, 1997, the Petitioner wrote Circuit Judge Joe Griffin advising him that the Clerk had responded to his request, but that "none of the pertinent requests or questions were answered." (Exhibit N). He further advised the trial court that he had filed a motion for extension of time to lodge the record with the Supreme Court. The Petitioner included, with this letter, a copy of said motion, and three (3) copies of the order to be signed by the judge. Additionally, he included a self-addressed stamped envelope for the return of one of the orders. The court never acted on the motion. As a result, the Petitioner was required to file the record with the Supreme Court on December 24, 1997. The record was not tendered to the Arkansas Supreme Court until January 22, 1998, one hundred and twenty (120) days after the notice of appeal was filed. The Petitioner's attempt to tender the record was denied by the clerk.

The clerk's neglect in responding to Petitioner's request and Judge Griffin's failure to act upon Petitioner's motion are matters over which this Petitioner had no control and impeded his ability to timely file his record with the Arkansas Supreme Court. Added to this, was Petitioner's inability to call the clerk or the judge, which also acted as an impediment to comply with the ninety (90) day time limit. All of these state officials made compliance with this rule impracticable under *Murray v. Carrier, supra, and Strickland v. Washington, supra.*

Moreover, the Arkansas Supreme Court's rule regarding the granting and dismissing motions for rule on clerk is in violation of equal protection. In sum, the rule provides that when a litigant, being represented by counsel, fails to lodge the record on time, the motion will typically be granted as long as the attorney prepares an affidavit taking the blame for the failure. *See Hilstrom v. State,* 325 Ark. 317, 923 S.W.2d 874 (1996) (the appellant's attorney was given thirty (30) days to file a motion and affidavit accepting responsibility for not timely filing the transcript); *Warren v. State,* 329 Ark. 637, 950 S.W.2d 462 (1997); *Moses v. State,* 327 Ark. 420, 938 S.W.2d 233 (1997); *See also Sanders v. State,* 329 Ark. 363, 952 S.W.2d 133 (1997) (applying this same standard to Rule 37 petitions).

The litigant, represented by counsel, has the ability to get his claim heard on appeal, despite the failure to lodge the record in time. However, the same rule does not apply to a litigant who is does not have an attorney, or is unable to afford one. *See Sullivan v. State,* 301 Ark. 352, 784 S.W.2d 155 (1990); *Bragg v. State,* 297 Ark. 348, 760 S.W.2d 878 (1988).

25

The only difference between the Petitioner here, and the petitioner's in *Warren, Moses,* and *Sanders, supra,* is that the Petitioner here did not retain an attorney. As a result, he was unable to have his Rule 37 claims heard on appeal. This rule violates equal protection. The Arkansas Supreme Court, as state officials, applying a rule that violates equal protection, made compliance with the filing rule impracticable.

### **Request for Evidentiary Hearing**

Under *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 112 S.Ct. 1715 (1992) a petitioner is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state court proceedings, and actual prejudice resulting from that failure. Petitioner has clearly shown cause, and, as shown above, a fundamental miscarriage of justice would result from a failure to hold a federal evidentiary hearing. 504 U.S. at 11, 112 S.Ct. at 1721.[4]

3. **The Petitioner's sentence constitutes cruel and unusual punishment under the United States Constitution because it is grossly disproportionate to the nature of the offense.**

The Eighth Amendment of the United States Constitution declares that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." *See Weems v. United States,* 217 U.S. 349, 30 S.Ct.

---

[4] Petitioner has previously made a request for evidentiary hearing under 28 U.S.C. § 2254 (e)(2), *supra.*

544 (1910). This amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001 (1983).    The Court noted, "[t]he principle that a punishment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence." *Id.* at 285. *See also Harmelin v. Michigan*, 501 U.S. 957, 960, 111 S.Ct. 2683 (1991) (this case calls into doubt the decision of *Solem*, however, the Court found a *Solem* analysis would be appropriate in the case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality). [5] *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133 (1980) and *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703 (1982).[6]

In *Solem* the provided three (3) criteria in analyzing proportionality under the Eighth Amendment. First, the gravity of the offense and the harshness of the penalty; Second, the sentences imposed on other criminals in the same jurisdiction, that is, whether more serious crimes are subject to the same penalty or to less serious penalties; Third, the sentences imposed for commission of the same crime in other

---

[5] The Court must be reminded that the *Harmelin* Court dealt with mandatory sentences of life imprisonment. And in that case, the defendant was convicted of possessing more that 1.5 pounds of cocaine.

[6] The Petitioner cites these cases to the Court, as it is not clear, from counsel's review or research, whether the Supreme Court has affirmatively taken the position against *Solem v. Helm*. It does seem clear in the later case of *Harmelin*, that the tripartite analysis of *Solem* would be appropriate in grossly disproportionate cases. 501 U.S. at 960.

jurisdictions. *Id.* 290-292.   The Petitioner can establish through the use of these criteria, that the sentence he received was disproportionate to the crime committed.

A.  <u>The harshness of the penalty far outweighed the gravity of the offense.</u>

    In the case at bar, the Petitioner, who has no priors, was convicted of selling .144 grams of cocaine for fifty dollars ($50.00).   The statute that the Petitioner was convicted under, lists the offense as a Y-felony.  A.C.A. § 5-64-401 (Michie 1987).  The punishment range for a Y-felony is ten (10) to forty (40) years, or life. The jury sentenced the Petitioner to life.  (Exhibit O).   The Department of Community Punishment, using the sentencing guidelines, would agree that the sentence is wholly disproportionate to the convicted charge.

    On August 8, 1994, the Department of Community Punishment prepared a pre-sentence investigation report ("PSI"). (Exhibit P).  The PSI reflects a calculation of presumptive sentence.  This calculation takes into consideration objective factors in determining what sentence to apply in a given case. Objective factors include the seriousness of the offense, and the criminal history score of the defendant.  These factors increase with the more serious offenses, and the "priors" that the defendant may have.  This is calculated to give a presumptive sentence for which the judge can sentence the defendant. The PSI in the case at bar reflected a calculated presumptive sentence of forty-two (42) months with an offense seriousness level of 7 and a criminal history of 0.  The PSI further recommended alternative sentencing.  (Exhibit P).

B.  <u>More serious crimes are subject to the same penalty or to less serious penalties in the State of Arkansas.</u>

The serious crimes that are Y-felonies and subject to the penalty of ten (10) to forty (40) or life are following: Murder in the first degree, A.C.A. § 5-10-102 (Michie 1999); kidnapping, A.C.A. § 5-11-102 (Michie 1999); aggravated robbery, A.C.A. § 5-12-103 (Michie 1999); rape, A.C.A. § 5-14-102 (Michie 1999); terroristic act, A.C.A. § 5-13-310 (Michie 1999); and arson, A.C.A. § 5-38-301 (Michie 1999).  All of these crimes are considered violent, yet are subject to the same penalty received by the Petitioner. It must be noted that the only offense that is more serious and subject to a harsher sentence, is capital murder, A.C.A. § 5-10-101 (Michie 1999), where the death penalty can be imposed. Further, a person with a criminal history score of zero (0) would receive a presumptive sentence of between ten (10) and thirty (30) years for these offenses. It must be reiterated to the Court, that the Petitioner had a presumptive sentence of forty-two (42) months under the same criteria considered by the Department of Community Punishment. [7]

More troubling is that other serious crimes are subject to lesser penalties. *See Weems* 217 U.S. at 380-381 (the Court identified an impressive list of more serious crimes that were subject to less serious penalties). The following are B felonies and subject to a sentence of five (5) to twenty (20) years: Murder in the second degree, A.C.A. § 5-10-103 (Michie 1999); kidnapping (B-Felony), A.C.A. § 5-11-102 (Michie 1999); robbery, A.C.A. § 5-12-102 (Michie 1999); battery in the first degree, A.C.A. § 5-13-201 (Michie 1999); terroristic act (B-Felony).

A.C.A. § 5-13-310 (Michie 1999); and arson (B-Felony), A.C.A. § 5-38-301 (Michie 1999).   Again, these crimes are all violent in nature.  In addition to these offenses being subject to a lesser sentence by Statute, some of them are subject to more pen time under the sentencing guidelines.  For example a person convicted of murder in the second degree or battery in the first degree, and having a zero (0) criminal history score can expect to receive a ten (10) year sentence under the sentencing guidelines.  This is before the trial court makes a decision as to whether he or she will depart from the sentencing guidelines. See A.C.A. § 16-90-804 (Michie 1997).

C.  <u>The sentences imposed for commission of the same crime in other jurisdictions is substantially less.</u>

The following jurisdictions within the Eighth Circuit provide for the following sentences to be imposed for the commission of the same crime, i.e., first-time offender and minimal amount of delivery. *See* Tenn. Code Ann. § 39-17-417 (c) (2) (Supp. 1999) and Tenn. Code Ann. § 40-35-111 (b) (3) (Repl. 1999) (provides for a sentence of not less than three (3) years and nor more than fifteen (15) years); Minn. Stat. Ann § 152.024 (1998) (not more than fifteen (15) years); La. Rev. Stat. Ann. § 40.967 (Supp. 1999) (not less than five (5) and no more than thirty (30) years); Mo. Stat. Ann. § 558.011 (1999) (not less than five (5) and no more than fifteen (15) years); Iowa Code Ann. § 902.9 and § 124.401 (Supp. 1999) (sentence not to exceed ten (10) years); N.D. Cent. Code § 12.1-32-01 (Repl. 1997) and N.D. Cent. Code § 19-03.1-23 (Supp. 1999) (minimum sentence

---

[7] The guidelines further provide that alternative sentencing can be imposed.

one year (1) and a day, and no more than twenty (20) years); S.D. Codified Laws § 22-6-1 (6) and § 22-42-2 (Rev. 1998) (minimum sentence one (1) year and not to exceed ten (10) years).

The final comparison of sentences to those of other jurisdictions would include the federal government, and the use of Federal Sentencing Guidelines. According to U.S.S.G. 2D1.1, the amount of cocaine involved in the case at bar, .144 grams, would set Petitioner in offense level 12. Because the Petitioner had no prior felony convictions, he would have merited a criminal history score of zero (0), which would have translated into a criminal history category of one. He would have no adjustment upward in accordance with U.S.S.G. 4A1.1, and he would receive a sentence of sixteen (16) <u>months</u>.

Petitioner has met and surpassed the tri-part factors of *Solem*, and has established that the sentence is grossly disproportionate.

## Conclusion

WHEREFORE, the Petitioner prays that his amended petition for habeas corpus be granted and that he be given an evidentiary hearing; and for any other relief the Court deems just and proper.

Respectfully submitted,

Hampton & Larkowski
Patrick J. Benca
308 South Louisiana Street
Little Rock, AR 72201
(501) 376-6277
(501) 376-6279 fax

Patrick J. Benca, # 99020

31

## Certificate of Service

I, Patrick J. Benca, certify that a true and correct copy of the [illegible] was placed in the U.S. Mail with sufficient postage affixed hereto, [illegible] delivery to following on this 6th day of March, 2000.

Milton Fine
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201-2610

Patrick J. Benca

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached to Original Document in Court's Case File